**IN THE COURT OF APPEALS OF IOWA**

No. 20-1083
Filed December 16, 2020

**IN THE INTEREST OF Z.G.,**
**Minor Child,**

**K.G., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Appanoose County, William Owens,

Associate Juvenile Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Kevin S. Maughan, Albia, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Julie De Vries of De Vries Law Office, PLC, Centerville, attorney and

guardian ad litem for minor child.


        Considered by Vaitheswaran, P.J., Schumacher, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**GAMBLE, Senior Judge.**

A mother appeals the termination of her parental rights to her child, Z.G.[1] On appeal, she challenges the statutory grounds authorizing termination and argues the juvenile court should have established a guardianship instead of terminating her parental rights. We affirm.

**I. Scope and Standard of Review**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

---

[1] Neither the legal father nor the biological father appeal the termination of their respective parental rights.

## II. Discussion

### A. Statutory Grounds

The mother challenges the statutory ground authorizing termination. The juvenile court authorized termination pursuant to Iowa Code section 232.116(1)(h) (2020). Iowa Code section 232.116(1)(h) authorizes termination of a parent's parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother limits her challenge to the fourth element, whether Z.G. could be returned to her care. We find Z.G. could not be returned to her care.

In fact, the mother conceded Z.G. could not be returned to her care at the termination hearing. The mother lives with her boyfriend, a sex offender, whom she intends to marry. The boyfriend has three convictions: lascivious acts with a child, indecent contact with a child, and assault with intent to commit sexual abuse. Two of his convictions involved victims who were four years old, one boy and one girl. His third victim was an adult in a nursing home. From this information, we believe the boyfriend targets individuals who are unable to self-protect. Z.G., born in 2018, is too young to self-protect. The mother claims she would protect Z.G. by having a family member or baby sitter watch Z.G. while she works. But we do not believe it is realistic to assume Z.G. would never be alone with the boyfriend if they

lived in the same home. And we are troubled by the mother's statements to providers suggesting she believes any risk of harm would be alleviated if she married her boyfriend. Therefore, we believe Z.G. would not be safe if returned to the mother. *See, e.g.*, *In re B.T.*, No. 20-0768, 2020 WL 4812662, at *1 (Iowa Ct. App. Aug. 19, 2020) (finding a child could not be returned to mother who lived with someone on the sex-offender registry); *In re A.M.*, No. 10-0527, 2010 WL 2383899, at *2 (Iowa Ct. App. June 16, 2010) (finding the mother's relationships with sex offenders created a risk of harm to the children and the children could not be safely returned to the mother's care).

In addition to the inherent safety risk of a repeat sex offender living in the home, the condition of the mother's home also prevented Z.G. from being safely returned. A service provider reported she observed animal feces and urine on the floor and cockroaches in the home. When a visit occurred in the home, the care provider had to direct the mother to stop Z.G. from picking up the cockroaches. So we do not find the home environment safe for Z.G. and conclude it also prevented Z.G.'s return to the mother's care.[2] *Cf. In re Z.P.*, 948 N.W.2d 518, 524–25 (Iowa

---

[2] We note the mother argues her home would have been clean had she received services to help her clean the home. We interpret this as a reasonable-efforts challenge. However, parents must bring their complaints regarding reasonable efforts to the juvenile court's attention prior to the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is considered waived for appeal). Our review of

2020) (finding a child could not be returned to the father when the home was not ready for the child to live in).

A statutory ground authorizing termination is satisfied, so the first step in our analysis is complete. The mother does not challenge the juvenile court's determination that termination is in Z.G.'s best interest, so we do not address the best-interest step. We move to our third step: possible exceptions to termination.

### B. Exceptions to Termination & Guardianship

We consider whether section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception, we are not required to apply the exception. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We exercise our discretion, "based on the unique circumstances of each case and the best interests of the child," to determine whether the parent-child relationship should be saved. *Id.* (citation omitted).

The mother points to paragraph (a) to avoid termination. Paragraph (a) permits a juvenile court to preclude termination when "[a] relative has legal custody of the child." Iowa Code § 232.116(3)(a). Z.G.'s maternal great grandparents had legal custody of her prior to termination.[3] The mother argues the juvenile court should have relied on paragraph (a) to preclude to termination and instead set up a guardianship with the maternal great grandparents as legal guardians. The

---

the record on appeal reveals no instance where the mother requested cleaning assistance. So the claim is waived.

[3] The court placed legal custody of Z.G. with the Iowa Department of Human Services at the time of termination.

mother fears following termination the maternal great grandparents will adopt Z.G. but will be too old to care for Z.G. before she reaches adulthood. But the mother's concern is built upon a faulty premise. It is not a foregone conclusion that the maternal great grandparents will adopt Z.G.

Moreover, the mother's concern that Z.G.'s caregivers could change in the future as the great grandparents age does not favor establishment of a guardianship with the great grandparents. Instead, a guardianship would simply add another dimension of uncertainty to the story. "[A] guardianship is not a legally preferable alternative to termination." *A.S.,* 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Guardianships can be modified or terminated. *See id.* at 477–478 (discussing the practical realities of guardianships). So placing Z.G. in a guardianship would definitely prevent Z.G. from reaching permanency unlike termination, which would provide Z.G. with permanency.

Given these facts, we conclude the mother did not present a compelling reason for us to apply section 232.116(3)(a) to preclude termination and establish a guardianship.

**III. Conclusion**

The State established grounds for termination. We decline to apply an exception to preclude termination or to establish a guardianship with the maternal great grandparents.

**AFFIRMED.**